IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| POPOV, | ) ) ) ) | Case No. |
| *Plaintiff,* | ) | 2:23-cv-9001 |
| v. | ) | **COMPLAINT FOR** |
| DEPARTMENT OF HOMELAND SECURITY, | ) | **DECLARATORY AND** |
| *Defendant.* | ) | **INJUNCTIVE** |
| | ) | **RELIEF** |

## **INTRTODUCTION**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to compel the US Citizenship and Immigration Services ("USCIS"), a component of the U.S Department of Homeland Security ("DHS"), to immediately release the immigration record of Hrabar TODOROV.

2. The record of Hrabar TODOROV will expose the gross misconduct and criminal negligence of DHS in performing its duties to administer and enforce the immigration law. "Transparency in government operations is a priority of th[e Biden] . . . Administration." Attorney General, Memorandum for Heads of Executive Departments and Agencies: Freedom of Information Act Guidelines, at 4 (Mar. 15, 2022).

3. While this case focuses on the issue whether the public interest in the record outweighs the subject privacy interest, it cannot be separated from its broader

context. The press and Congressional hearing rooms are replete with detailed accusations that DHS is deliberately refusing to enforce the Country's immigration laws and is responsible for the current crisis at the border. Indeed, the broader controversy is so grave that Articles of Impeachment have been filed against DHS Secretary Alejandro N. Mayorkas (H. Res. 8 & 89, 117th Cong. (2023)) and Secretary Mayorkas has taken the extraordinary step of retaining private counsel to represent him in impeachment proceedings. See Retaining Private Counsel to Represent the DHS Secretary in Impeachment Processes, 47 Op. O.L.C. __, 2023 WL 2468411 (OLC Jan. 4, 2023); PIID 70RDAD23C00000002.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(C)(i),(a)(6)(E)(iii). Because this action arises under FOIA against an agency of the United States, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue lies in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff resides in Los Angeles County.

6. This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 5 U.S.C. §§ 552(a)(4)(B) and (a)(6)(E)(iii), 28 U.S.C. §§ 2201–2202 and Federal Rules of Civil Procedure 57 and 65.

## TIMELINESS

7. 28 U.S.C. § 2401(a) states in pertinent part that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." DHS denial to release the subject record was dated September 6, 2023 or well within the six years of Statute of Limitation. **(Exhibit A)**

8. The exhaustion of all administrative remedies in connection with FOIA requests is required before a party can seek judicial review. *Stebbins v. Nationwide Mutual Insurance Co.,* 757 F.2d 364 (D.C. Cir.[1985])*; see also Crooker v. United States Secret Service, 577 F.Supp.* 1218, 1219 (D.D.C. 1983). Plaintiff has appealed the original denial of DHS to release the subject record under FOIA. **(Exhibit A)**.

## STANDARD OF REVIEW

9. Based on 5 U.S.C. § 552(a)(4)(B) when there is a claim that the agency record was improperly withheld from the complainant the court shall determine the matter *"de novo"*

## BURDEN OF PROOF

10. The burden of proof is on the defendant agency, which must justify its decision to withhold the record. 5 U.S.C. § 552(a)(4)(B); *Solar Sources, Inc. v. United States,* 142 F.3d 1033, 1037 (7th Cir. 1998) ("The government bears the burden of justifying its decision to withhold the requested information pursuant to FOIA exemption)

## PARTIES

11. Plaintiff is a California Licensed Attorney (State Bar# 178040).

12. Defendant U.S. Department of Homeland Security ("DHS") is an agency of the United States government and an agency within the meaning of 5 U.S.C. § 552(f)(1).

13. Defendant has custody and control over the records the Plaintiff seeks to have made publicly available under 5 U.S.C. § 552(a)(2).

## STATEMENT OF THE CASE

12. During a credibility determination in unrelated case, it came to Plaintiff's attention that Hrabar Todorov had committed numerous frauds and felonies which remained undetected by DHS during his applications for conditional permanent resident, permanent resident and US Citizenship.

13. On June 21, 2023 Plaintiff filed Form G-639 (Freedom of Information/Privacy Act Request) with DHS requesting the release of the Immigration file of Hrabar TODOROV. **(Exhibit B)**

14. On July 1, 2023 DHS denied Plaintiff's request for the release of Hrabar TODOROV immigration record for failing to obtain Subject of Record's written consent according to 5 CFR § 5.52(b)(6). **Hrabar first name was mistakenly spelled as Bravar by the DHS in their decision**. (**Exhibit A, Pages 1 and 3)**

15. On September 1, 2023, Plaintiff appealed DHS' denial to release Hrabar TODOROV's record before FOIA/PA Appeals Office and on September 6, 2023 received another denial of his request. **(Exhibit A, Page 1)**

16. In its appeal as well as in its initial request Plaintiff has conducted detailed legal and factual analysis why Exception 6 of FOIA 5 USC § 552(b)(6) does not apply to subject record and DHS must release it because the public interest outweighs significantly the private interest of Hrabar TODOROV. **(Exhibit B)**

17. However, the denial of the appeal was identical with the original denial claiming that Plaintiff failed to obtain written consent from the subject of record under 5 CFR § 5.52(b)(6).  Defendant again did not look at the merits of the case and did not balance whether the public interest outweighs the private interest of Hrabar TODOROV contrary to the FOIA statute and its own instructions on form G-639.

## STATEMENT OF THE FACTS

18. The record of Hrabar TODOROV will expose the gross misconduct and criminal negligence of DHS in performing its duties to administer and enforce the immigration law.  Here are the facts so far discovered by Plaintiff and mandating the release of Hrabar TODOROV's immigration record.

19. On July 15, 2014 Hrabar TODOROV (Hrabar) married in Las Vegas, Nevada his first cousin Hristina PESHEVA (Hristina). **(Exhibit C) – All Exhibits**

are redacted for privacy protection based on Fed. R. Civ. P §5.2(a) and Local Rule § 5.2-1

20.   Hrabar TODOROV and Hristina PESHEVA are first cousins. Their mothers, Snezhanka MITOVA and Siyka PESHEVA are sisters from the same mother, Marika MITOVA and the same father Hristo MITOV. **(Exhibit D)** Exhibit D is a translated abstract of the Bulgarian National Data Base showing the children and the parents of the two sisters and proving unequivocally that Hrabar and Hristina are first cousins.

21.   Under Nevada Revised Statutes NRS §125.290 all marriages, between first cousins are void automatically without any decree, annulment or other legal proceedings. **(Exhibit E)**

22.   In addition, Nevada Revised Statutes NRS §201.180 classifies marriages between first cousins Class A felony punishable by imprisonment not less than 2 years and maximum term of life with the possibility of parole. **(Exhibit E)**

23.   Finally, the crime of incest is a felony committed in a secret manner and according to NRS § 171.095 the statute of limitation starts to run from the time of discovery the felony which in the present case coincides with the filing of this FOIA record release request. **(Exhibit F)**

24.   The first cousins and now newlyweds showed on the marriage certificate an address where they never lived and never intended to live. **(Exhibit C)** They use the address 1817 Selby Ave. Apt. 303, Los Angeles, CA 90025 only to receive mail in preparation to file a fraudulent immigration case.

25.   Soon after the void marriage, Hristina, who is a US citizen, filed with DHS a petition for immigrant visa for Hrabar and he filed an application to Adjust Status to receive a Temporary Green Card.

26.    Less than a year later, in March 2015, Hrabar received a Temporary (2 Years) Green Card after he and Hristina defrauded the US officer that they are a real

couple and of course omitting that they are first cousin - a Class A felony under Neveda law which made the marriage automatically void. Retrospectively, without a valid marriage, the just received green card was void too.

27. A year later, in the summer of 2016, Petya Aleksandrova, (Petya) then married in Bulgaria with a 2-year-old son, visited Los Angeles as a tourist to attend a wedding of her girlfriend. There she met Hrabar and they started dating.

28. While dating Petya, in February 2017, Hrabar and his first cousin/wife Hristina filed with DHS an application for permanent green card because the temporary one was about to expire. (Form I-751) The purpose behind this filing is that married couple proves that their marriage is vital and to submit evidence that for the last 2 years they lived as husband and wife and present numerous pictures and joint bank accounts and other bills.

29. Later the same year, in September 2017, Petya left her Bulgarian husband and moved to Los Angeles to leave with Hrabar. The couple rented an apartment on her name at: 10480 National Blvd. Apt. 312, Los Angeles, CA 90034. **(Exhibit K)** – This information was found on Truth Finder App.

30. Instead of been rival with Hrabar's first cousin/wife, Petya became a friend with Hristina as her future in-law. **(Exhibit I)** is a copy of Petya's Facebook profile where she uses as her last name her boyfriend's first name – PETYA HRABAR. There are 8 comments as to her new cover photo and one of these comments is from Hristina. The comment stated: **"Beauty  "** "Nice relations" between wife and girlfriend.

31. On July 9, 2018 Hrabar obtained his permanent green card while leaving with his girlfriend Petya for almost a year and moved to a new address: 6030 Seabluff drive, Play Vista just across Loyola University where Petya was studying law. At the same time Hrabar and Hristina were claiming fraudulently on Immigration Form I-751 that they are living together as husband and wife.

Immediately after getting his permanent green card Hrabar and Hristina filed for divorce.

32. On January 14, 2019, Hrabar and his first cousin Hristina divorce became final even his marriage to Hristina was void from the beginning. **(Exhibit E)** The divorce opened the way of Petya to marry him and apply for green card once Hrabar becomes a US citizen.

33. On **xxxxxxxx** 2020, Petya ALEKSANDROVA gave birth to a baby boy – C. H. at Providence Saint John's Health Center, Santa Monica, Los Angeles County. On the birth certificate as father was named Hrabar TODOROV. The last name of their child was different from the last names of the parents in order to avoid detection that Hrabar has an out of wedlock child while applying for US citizenship based on the green card obtained through the fraudulent and void marriage to his first cousin Hristina.

34. On October 27, 2021, while already divorced, Hrabar and his first cousin, Hristina, bought a house for $1,585,000 located at **xxxxxxxxx**, Sherman Oaks, CA 91423 as shown on MLS Printout. **(Exhibit H)** This is the house where Hrabar moved with Petya ALEKSANDROVA, the mother of his son, C. H. and are currently residing at. This is the **<u>home address</u>** which Petya later used in her California State Bar Profile and which is redacted based on Local Court Rule § 5.2-1 **(Exhibit J)**

35. The Grand Deed however, reveals that the house in Sherman Oaks, California is owned jointly by Hrabar TODOROV, Hristina PESHEVA and Petya ALEKSANDROVA as joint tenant and all unmarried. **(Exhibit G)** In two words the fraudulent conspiracy continued and Hrabar actually bought a house jointly with his ex-wife and first cousin, Hristina and his girlfriend Petya, the mother of his son C.H. and pregnant with their second child Z. H. who was born later on **xxxxxxxxx**, 2022.

36. On February 4, 2022 Hrabar applied for US citizenship. Just less than two months later, on March 31, 2022 Hrabar became a US citizen and obtained

Certificate of Naturalization. On the Naturalization Application Hrabar used the same fake address on 1817 Selby Avenue even he was already leaving for 6 months in the just bought house in Sherman Oaks, California with Petya and his out of wedlock son, C. – another successful move to defraud DHS and concealed the fact that he never lived together with his first cousin/wife Hristina whose void marriage was just to obtain green card through marriage fraud. **(Exhibit L)**

37. To obtain a US Citizenship in just 55 days is probably a national and DHS record.  Ordinary immigrants are waiting more than a year just to have an interview for US naturalization when Hrabar with void marriage got it in a record short time.

38. Just six days later, on April 6, 2022 Hrabar TODOROV married Petya ALEKSANDROVA who changed her last name to Petya HRABAR. Unusual decision to adopt the first name of her husband as her last name when in fact Hrabar kept his last name as TODOROV with only explanation to avoid detection and defraud DHS.

39. On the marriage certificate Hrabar, who already owned the house in Sherman Oaks, California still put the old fake address on Selby Street after already leaving for more than four months in the Sherman Oaks house with Petya and their born out of wedlock son C.H.

40. The newlywed couple immediately applied for Petya's green card based on Hrabar's just acquired US citizenship reaching the final goal of the fraudulent conspiracy – both Hrabar and Petya to get Green cards and US citizenship even the original marriage of Hrabar to his first cousin Hristina was void based on Nevada law. **(Exhibit E)** Petya's green card case is still pending making her involvement in this fraudulent activity ongoing at the present time.

41. Hrabar TODOROV obtained permanent green card on July 9, 2018 and later on March 31, 2022 a US citizenship, when in fact for those **4 consecutive years he owned a California Cultivation Cannabis License and a Humboldt County**

**Permit for Cannabis Cultivation.** **(Exhibit M)** Both licenses are public information, easily accessible and required FBI fingerprint clearance which makes DHS job to discover them extremely simple.

42. Growing cannabis and later selling it is a federal crime and felony because cannabis is a Schedule 1 under Controlled Substance Act (CSA) and under 21 USC §841(a)(1) it is illegal to manufacture, distribute or possess a controlled substance. According to the Humboldt County Permit for Cannabis Cultivation **(Exhibit M)** the growing area was 10,500 sq.f. Simple calculation shows that with an of average two crops per year and for 4 years, Hrabar TODOROV has cultivated and sold at least 3,200 pounds of pure marijuana. (If we assumed 400 pounds marijuana cultivated per crop which is a very conservative estimate according to google search). Based on 21 USC § 841(b)(1)(A)(vii) the penalty for involving more than 1,000kg (2,202 pounds) marihuana is at least 10 years imprisonment.

43. On the other hand, under INA 212(a)(2)(C), 8 USC § 1182(a)(2)(C) "Any alien who the consular or immigration officer knows or has reason to believe is or has been an illicit trafficker in any such controlled substance or is or has been a knowing assister, abettor, conspirator, or colluder with others in the illicit trafficking in any such controlled substance, is excludable."

44. The omission of the DHS immigration officers on numerous occasions during the I-751 interview and later during the Naturalization interview to find out Hrabar TODOROV's drug related activities and render him excludable is more than disturbing and amounts to a matter of national security. If a drug dealer and trafficker can so easily cheat the immigration system, so a sophisticated terrorist can do it also with no problem to get US citizenship completely undetected.

45. Plaintiff understands that DHS gross negligence and misconduct in failing to discover Hrabar TODOROV's license to grow and distribute marijuana on numerous occasions is just a part of his success to cheat the immigration system and

become a US citizen. In order to conceal his criminal activities under the Federal law he definitely did provide in his numerous immigration forms during the years a false and untrue information as well as omitting material facts related to his Cannabis growing and selling activities. This shall include the concealment of his employment as well as cheating on his Federal Tax returns where he probably did not report the millions of dollars gross income of growing and selling more than 3200 pound of pure cannabis for four years from 2018 until 2021. Had he done so, DHS would have had a much better chance to detect his federal criminal activities.

46. Based on 18 USC §1001(a) concealing a material fact in any matter within the jurisdiction of the executive, (such as DHS) legislative or judicial branch of the Federal government is a felony punishable by imprisonment not more than 5 years.

47. Hrabar TODOROV's immigration files which Plaintiff is requesting through FOIA will reveal all his omissions and falsifications of material facts facilitating his fraudulent grant of permanent legal resident and later US citizenship in just 55 days – definitely a national record. How sophisticated are those omissions and falsifications of material facts is a matter to be determined through this FOIA request and shall help the public to become aware how an immigrant with little or no education can manipulate the immigration system with such sophistication.

48. The marriage fraud, which remained undetected by the DHS, made Hrabar TODOROV a repeat offender of the immigration laws and even bigger danger to the society and the public in his sophisticated ability to defraud repeatedly the Federal government. This fraudulent and void marriage warrants future investigation which can be achieved by obtaining his immigration file and exposes one more time DHS incompetence.

49. The immigration file of Hrabar TODOROV is necessary also to obtain all reported addresses the couple lived at while Hrabar was married to his first cousin

and to confirm the fact that the first cousins never lived physically together and that their marriage was fraudulent.

50. The life of Hrabar TODOROV is full of drug dealings, false tax returns, fraudulent and void marriage through which he obtained a green card and later US Citizenship with deception, sophisticated schemes of probably unreported child born out of wedlock and finally a house bought jointly by him, his ex-wife and new wife. And all these criminal acts were not only completely undetected by the DHS for a period of more than seven years but the Agency, instead of arresting and prosecuting him, rewarded him with all benefits available under its authority. This shows that our immigration system is broken and the only way to be fixed is by exposing it to the public which is the main purpose of this FOIA request.

## STATEMENT OF THE ISSUES

- **Privacy Exemption 6 of FOIA, 5 U.S.C. § 552(b)(6) does not apply for the fraudulent entries on the requested record, which constitute numerous felonies under the Federal law.**

- **Privacy Exemption 6 of FOIA, 5 U.S.C. § 552(b)(6) does not apply because public interest outwaits the private interest of Hrabar TODOROV in revealing his immigration file through this FOIA request.**

## ARGUMENTS

51. When a third-party requests records about another person that are subject to FOIA and Privacy Acts, the answer to the interface question is straightforward if the records are not exempt under FOIA. The Privacy Act has no limitations on release of such records. Specific language in the Privacy Act [5 U.S.C. § 552a(b)(2)]

authorizes release of records where FOIA would require release. An agency must release all requested records which are not exempt under FOIA.

52. On the other hand, FOIA 5 U.S.C. § 552(b)(6) exempts the release of information to a third party which is: "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" **(Exemption 6)**.

53. In 1989, the Supreme Court issued a landmark FOIA decision in *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989) which for the past 24 years has governed all privacy-protection decision making under the Act.

54. If a privacy interest is found to exist, the public interest in disclosure, if any, must be weighed against the privacy interest in nondisclosure*: Ripskis v. HUD,* 746 F.2d 1, 3 (D.C. Cir. 1984)*; NARA v. Favish,* 124 S Ct. 1570, 1580 (2004) ("The term 'unwarranted invasion' requires us to balance the family's privacy interest against the public interest in disclosure.")

### *Privacy Consideration*

55. The first step in the Exemption 6 balancing process requires an assessment of the privacy interests at issue. The relevant inquiry is whether public access to the information at issue would violate a viable privacy interest of the subject of such information. *Schell v. HHS,* 843 F.2d 933, 938 (6th Cir. 1988)*; Ripskis v. HUD,* 746 F.2d 1, 3 (D.C. Cir. 1984) *In its Reporters Committee decision*, the Supreme Court stressed that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person. 489 U.S. 749, 763 (1989)

56. The case law overwhelmingly supports the Exemption 6 private interest of Hrabar TODOROV subject to this FOIA request such as his name, addresses, SSN, etc., which his immigration file consists of. However, there is no case law on point as to the release of the fraudulent addresses of Hrabar, his first cousin/wife and Petya. In the statement of facts, Plaintiff expressly pointed that he's interested only in the fraudulent portions of the numerous immigration applications as well as well as to the entries showing his jobs, concealment of his cannabis growing operations, the child born out of wedlock, the answers of the numerous questions related whether he was engaged in growing, trafficking and sale of illegal drugs, as well as whether he reported or concealed his cannabis growing business operations on his federal tax return and etc. None of these facts has ever been checked by the DHS and now is time for the public to learn how easy and for so long (7 years) Hrabar TODOROV can manipulate the Federal Agency. This is more than embarrassing fact for the Defendant who cannot hide its incompetence under the privacy interest of Exemption 6 refusing to reveal the fraudulent information contained in the requested record.

57. Based on the aforementioned Plaintiff contends that the Privacy Exemption 6 of FOIA, 5 U.S.C. § 552(b)(6) shall not apply for the fraudulent entries on the requested record, which constitute numerous felonies under the Federal law. The existence of those numerous fraudulent entries, proven beyond a reasonable doubt in the Statement of Facts above, shall not be covered by Exemption 6 because the individual whose file is requested does not have privacy interest in such information proven to be fraudulent and triggering felony charges.

58. Alternatively, if the court finds that the overwhelming fraudulent information in Hrabar TODOROV's immigration file still constitutes his privacy

interest within the meaning of Exemption 6, then Plaintiff will move to the second issue - the balancing test.

### *Factoring The Public Interest*

59. Once it has been determined that a personal privacy interest is threatened by a requested disclosure, the second step in the balancing process comes into play. This stage of the analysis requires an assessment of the public interest in disclosure. The burden of establishing that disclosure would serve the public interest is on the requester. *NARA v. Favish*, 124 S. Ct. 1570, 1582 (2004) The Court in *Favish* also adopted a higher standard for evaluation of "agency wrongdoing" claims and held that "the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

60. It is Plaintiff contention that the Statement of Facts as well as the attached 13 Exhibits constitute concrete evidence of the occurrence of Government (DHS) impropriety in the present case. Actually "impropriety" triggers a much lighter standard to prove than the gross criminal negligence committed by DHS by letting Hrabar TODOROV for seven years to flaunt the immigration system. Hrabar TODOROV became a permanent resident through a void and fake marriage with his first cousin, had a son, C.H., born out of wedlock and living with Petya ALEKSANDROVA, while married to his first cousin. Finally, he became a US citizen just for the national record of 55 days after running for four years a marijuana farm with licenses issued on his name – a felony under the Federal Law**. (Exhibits C through M).**

61. In its *Reporters Committee* decision, the Supreme Court limited the concept of public interest under the FOIA to the "core purpose" for which Congress enacted it: To "shed light on an agency's performance of its statutory duties." 489 U.S. 749, 773 (1989)

62. The revealing of the immigration record of Hrabar TODOROV will shed a direct light on DHS' failure to perform its statutory duties. The mere fact that the Agency has allowed an immigrant who after committing numerous federal felonies in the course of seven years and provable per se on the face of his immigration record, to become a US citizen in just 55 days, constitutes much more than Agency failure to perform its statutory duties - it constitutes a potential threat to the national security.

63. DHS main purpose is to screen and admit in a lawful manner persons willing to legally enter the country. The background check of each candidate is one of the mandatory requirements in the application process. Hrabar TODOROV was fingerprinted and his background checked on more than one occasion during last 4 years as a part of his applications to remove the condition of his green card and recently during his US naturalization process. Hrabar also has submitted fingerprints in 2018 to the State of California as a mandatory requirement in the process of obtaining a license to grow cannabis which is a public process, and everybody can see online who has a cannabis license and how much cannabis can be grown.

64. However, DHS has failed to check and match this information which is a federal felony and on March 31, 2022 had made Hrabar a US citizen. What if a terrorist does the same and fools the immigration system in such a similar manner? Releasing Hrabar TODOROV's immigration files to the public will shed light on the threat to the National Security by showing how easy it is to cheat the immigration system and will force the Federal Government to fix it.

65. If an asserted public interest is found to qualify under this standard, it then must be accorded some measure of value so that it can be weighed against the threat to privacy. *Dep't of the Air Force v. Rose,* 425 U.S. 352, 372 (1976)*; Ripskis v. HUD,* 746 F.2d 1, 3 (D.C. Cir. 1981)*; Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 862 (D.C. Cir. 1981) As the Supreme Court in *Favish* pointedly emphasized, "the public interest sought to be advanced [must be]a significant one."124S.Ct. at 1580

66. The release of Hrabar TODOROV's immigration file can prove that DHS has breached the national security by failing to perform its statutory duty. Instead of prosecuting Mr. TODOROV for the numerous federal felonies he has committed, DHS has granted him US citizenship in just 55 days. If Hrabar TODOROV can manipulate the immigration system, any other felon or terrorist can do it too. This real breach of the National Security constitutes more than a "significant public interest" according to the standard established in *Favish*. – it's a compelling and convincing powerful public interest.

67. As stated by the Second Circuit in *Hopkins v. HUD*, 929 F.2d 81, 88 (2d Cir. 1991) "[t]he simple in vocation of a legitimate public interest . . . cannot itself justify the release of personal information. Rather, a court must first ascertain whether that interest would be served by disclosure.

68. A release of Hrabar TODOROV's immigration files will disclose straight from the face of the record his cheatings regarding his employment as a cannabis grower, his void marriage fraud with his first cousin and also DHS direct culpability in not detecting and omitting all these material facts which would have rendered Hrabar TODOROV an excludable alien.

## *The Balancing Process*

69.     Once both the privacy interest at stake and the public interest in disclosure have been ascertained, the two competing interests must be weighed against one another. *Dep't of the Air Force v. Rose* (1976, 425 U.S. 352, 372). In other words, it must be determined which is the greater result of disclosure: the harm to personal privacy or the benefit to the public. *Ripskis v. HUD,* 746 F.2d 1, 3 (D.C. Cir. 1984) In balancing these interests, "the 'clearly unwarranted' language of Exemption 6 weights the scales in favor of disclosure," *(Ripskis,* 746 F.2d at 3*)* but if the public benefit is weaker than the threat to privacy, the latter will prevail, and the information should be withheld.

70.     The threat to privacy need not be immediate or direct - it need only outweigh the public interest. *Citizen Health Research Group v. United States Dep't of Labor,* 591 F.2d 808, 809 (D.C. Cir. 1978) (finding that "[s]ince this is a balancing test, any invasion of privacy can prevail, so long as the public interest balanced against it is sufficiently weaker," and noting that the threat to privacy does not have to be "obvious").

71.     On one hand is Hrabar TODOROV's private interest not to reveal his immigration record which contains primarily fraudulent information which under the Federal law is punishable as various felonies. On the other hand, is the public interest which amounts to a breach of the National security interest by revealing to the public the likely gross criminal negligence committed by the DHS through allowing Hrabar TODOROV to deceive the system numerous times during the last seven years by becoming a lawful permanent resident via a void and fraudulent marriage to his first cousin and later becoming a US citizen in just 55 days while being a licensed cannabis grower and dealer – both felonies under the Federal Law.

72. Plaintiff contends that Hrabar TODOROV's cheating of the immigration system is a national security breach because if he can do it, any terrorist can also gain access and cheat the system and become US citizen.

73. The private interest of Hrabar TODOROV to conceal his fraudulent entries in his immigration record and the public interest to reveal an obvious breach of the national security are not competing interests and do not need to be weight against each other because the latter prevails overwhelmingly.

## FIRST CAUSE OF ACTION

## Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Disclose Responsive Record

74. Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1 through 73, inclusive, hereinabove.

75. Plaintiff desires a judicial determination that DHS has wrongfully withheld record responsive to Plaintiff's request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Order the Defendant to expeditiously process and disclose all responsive, nonexempt records, and enjoin the Defendant from improperly withholding records, and to make copies available to Plaintiff;

  c. Award the Plaintiffs reasonable attorneys' fees and other litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E), and any other applicable statute or regulation; and

  d. Grant such other relief as the Court may deem just, equitable, and appropriate.

Dated: October 25, 2023        Respectfully submitted,

Los Angeles, California

              Peter Popov, Esq. CA Bar No. 178040

              9461 Charleville Blvd. #227

              Beverly Hills, CA 90212

              popov90210@yahoo.com

              tel. (310)666-3360

              *Attorney for Plaintiff*