```
                  UNITED STATES OF AMERICA
              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
                      WESTERN DIVISION

                           - - -
              HONORABLE ANDRE BIROTTE, JR.
          UNITED STATES DISTRICT JUDGE PRESIDING
                           - - -


 PETER POPOV,                         )
                                      )
              PLAINTIFF,              )
                                      )
 VS.                                  )  CASE NO.:
                                      )  CV 23-9001-AB
 DEPARTMENT OF HOMELAND               )
 SECURITY,                            )
                                      )
              DEFENDANT.              )
 _____)




              REPORTER'S TRANSCRIPT OF PROCEEDINGS

                    FRIDAY, MAY 17, 2024

                    LOS ANGELES, CALIFORNIA




             LAURA MILLER ELIAS, CSR 10019
             FEDERAL OFFICIAL COURT REPORTER
             350 WEST FIRST STREET, ROOM 4455
             LOS ANGELES, CALIFORNIA 90012
                  PH:  (213)894-0374
```

2

```
 1   APPEARANCES OF COUNSEL:
 2
 3
     ON BEHALF OF PLAINTIFF:
 4
 5           PETER POPOV, ESQ.
 6           9461 CHARLEVILLE BOULEVARD
 7           NO. 227
 8           BEVERLY HILLS, CA 90212
 9
10
11   ON BEHALF OF DEFENDANT:
12
13           OFFICE OF U.S. ATTORNEY
14           BY:  SARAH CRONIN
15           ASSISTANT UNTIED STATES ATTORNEY
16           300 NORTH LOS ANGELES STREET
17           SUITE 7516
18           LOS ANGELES, CA 90012
19
20
21
22
23
24
25
```

|    |                                  |      |
|----|----------------------------------|------|
| 1  |                                  |      |
| 2  |                                  |      |
| 3  |              INDEX               |      |
| 4  |                                  |      |
| 5  | PROCEEDINGS                      | PAGE |
| 6  |                                  |      |
| 7  | MOTION TO DISMISS OR             |      |
| 8  | IN THE ALTERNATIVE               |      |
| 9  | MOTION FOR SUMMARY JUDGMENT      | 4    |

UNITED STATES DISTRICT COURT

1        LOS ANGELES, CALIFORNIA; FRIDAY, MAY 17, 2024; 3:15 P.M.
2                              - - -
3              THE CLERK:  Calling Civil Case 23-9001.
4              Popov versus Department of Homeland Security.
5              Counsel, please step forward and state your
6    appearances.
7              MS. CRONIN:  Good afternoon, Your Honor.
8    Sarah Cronin on behalf of the Department of Homeland
9    Security.
10             THE COURT:  All right.  Good afternoon.
11             MR. POPOV:  Good afternoon, Your Honor.
12   Peter Popov, the plaintiff.
13             THE COURT:  Good afternoon, Mr. Popov.
14             Let me just pull up my file here.  Bear with me one
15   second, please or more than one second I should say.
16             I want to make sure procedurally we're all on the
17   same page.  Originally, I thought this was filed as a motion
18   to dismiss, but through the pleadings, I think both parties
19   agree, I think, that this can be considered in the
20   alternative as a motion for summary judgment.
21             Am I correct, Ms. Cronin?
22             MS. CRONIN:  Your Honor, we actually filed it as a
23   motion to dismiss or in the alternative motion for summary
24   judgment.
25             THE COURT:  Got it.  Okay.  Thank you.

1              I've had a chance to look at the papers in this
2     case.  I have some questions and I think I'll start with
3     Mr. Popov.  So I guess, Mr. Popov the question I had was --
4     I'm sorry.  My computer is freezing.  I just want to make
5     sure I understand your position.
6              Are you contending the case involving Mr. Todorov,
7     the fact that DHS granted his immigration application in
8     light of the alleged improprieties of Mr. Todorov, are you
9     saying that's an impropriety on the part of DHS in total or
10    just an isolated case?
11             MR. POPOV:  No, Your Honor.
12             THE COURT:  I can't hear you.  Perhaps go to the
13    lectern where the microphone is closer.
14             MR. POPOV:  Can you hear me now?
15             THE COURT:  Yes, much better.
16             MR. POPOV:  I'm sorry.  Can you repeat the
17    question?
18             THE COURT:  Are you saying that the fact that DHS
19    granted Mr. Todorov's application, are you saying that that
20    is a systemic failure on behalf of DHS?  Is that your
21    position?
22             MR. POPOV:  Yes, Your Honor.  And the reason I'm
23    saying this is because this is not individual case because
24    it's in a process, it's took seven years.  This is seven
25    years consistently with Department of Homeland Security

1  closing its eyes.  And this guy committed first his marriage
2  is automatically void under the Nevada law.  Automatically
3  void means there is no marriage because he married his first
4  cousin.  And in addition, Class A felony.
5           THE COURT:  Can I stop you for a second?  You say
6  if I heard you correctly, you say it's not an individual case
7  because it took seven years, but you're still talking about
8  Todorov's case; right?
9           MR. POPOV:  Yes.  Seven years, but many different
10 departments, many different departments those years.  In the
11 end, he finally got authorization new citizenship just in
12 55 days which is unheard after all those crimes committed,
13 all those felonies.  And the case law completely says
14 because, uh, it's in a prolonged time, individual case is not
15 individual case because shed light on the whole misconduct of
16 the Department of Homeland Security.
17          THE COURT:  But what's the evidence that it shed
18 light on the whole misconduct of the agency?  I mean, at best
19 you're talking about what you believe to be a poor decision
20 on behalf of DHS.  But do you have evidence of other cases
21 where this is going on?
22          MR. POPOV:  I have this one case, but is going on
23 for seven years and there's seven, eight felonies.  Some of
24 them life in prison and these guys continue to flourish and
25 go through.  His wife, even the current wife, his illegal

1   child married his first cousin, the same wife even she got
2   her work permit and she's working as an attorney one block
3   from here now after all this.
4          So the Department of Homeland Security is not even
5   taking any measure.  Three times the Fraud Department unit
6   has been notified of this wrongdoing, of all those felonies.
7   And this is more than unbelievable because I've been
8   practicing immigration law for 30 years almost, 29, and I
9   never seen something similar.  I never heard something
10  similar.  I never read about something similar with my
11  colleagues.  For the smallest violation, you're out.  You
12  cannot get citizenship.  You lose your green card.  Even just
13  to smoke one cigarette of marijuana.
14         And here we're talking about huge drug dealings.
15  Everything is public.  The wife's drug dealings are public.
16  The fingerprints -- in those 50 days he became a citizen,
17  they even didn't run the fingerprint check because all those
18  will come up.  And he is a tax fraud because he didn't report
19  any of those millions of dollars those four years.
20         And the most important is the void marriage.  He's
21  not married to this person.  And they continue to grant his
22  wife work as an attorney just got a job.  I just Google her.
23  She got a job five months ago one block from here as
24  associate attorney.  She's not supposed to have a green card
25  because the green card her husband got --

1        THE COURT: What does the wife's status have to do
2   with Mr. Todorov's status?
3        MR. POPOV: Because this is kind of a fruit of a
4   poisonous treat. The wrongdoing of Mr. Todorov continues
5   even now because you're not to supposed to get. If he
6   doesn't have a valid marriage, he cannot get any benefits,
7   but he got everything. It's automatically void. If you're
8   not married, you cannot get a green card and then citizenship
9   based on this married, but he got it. And this is not
10  voidable so to go in court is automatically void based on the
11  Nevada law so there is no marriage.
12       And this guy continue to get more benefits. His
13  wife got, too. How can she get benefits when the green card
14  of her husband should be void? Not only this, he got a
15  citizenship.
16       THE COURT: So let me ask you another question. I
17  think one of the lawsuits that you reference in your papers
18  involves a cannabis company. But this is a company you both
19  started together?
20       MR. POPOV: No, Your Honor. There's nothing to do
21  with this. I am a partner to a company who bought property
22  in Northern California and we lease this property to Todorov.
23  That's it. He's supposed to pay rent. He stopped paying
24  rent and we tried to evict him and then he filed this lawsuit
25  to harass us, but the case was moved to Humboldt County and

1  we evict him a year-and-a-half ago.  So I need this one
2  because everything is his claim is his wife's.  We've never
3  been partners.  He's just a tenant.
4          THE COURT:  He's a tenant.
5          MR. POPOV:  Yes.  And all this credibility, the
6  determination you have to do because all these allegations is
7  to stop the eviction which is very usual.  When you want to
8  stop the eviction, you sue the landlord.
9          THE COURT:  Right.
10         MR. POPOV:  We need to do credibility
11 determination.  That's all how all this came up.  I don't
12 need to -- I don't need to file immigration benefit for my
13 credibility because his credibility already I found so many
14 things, so many felonies, it's completely destroyed.  All I
15 need is why the department didn't do anything and this is
16 completely inappropriate.
17         THE COURT:  So let me ask you cause I'm just
18 struggling to understand.  How does the release of
19 Mr. Todorov's immigration records in this case shed light on
20 the DHS's operations under the standard where you have to
21 show a significant advancement of the public's understanding
22 of their performance of their duties?  How does getting these
23 records show any of that?
24         MR. POPOV:  Because the records will show how the
25 Department of Homeland Security work from inside.  Three

```
 1    times all this felonies he's been reported to the Fraud
 2    Department of Department of Homeland Security.  We have the
 3    proof.  Now they claim their record doesn't show anything.
 4    And 55 days to be a citizen this is unheard of.  People wait
 5    years to become citizens so something is going very rotten
 6    inside.
 7              THE COURT:  That would be one case; right?
 8              MR. POPOV:  It's one case, but this case because
 9    there's so many events happening during those seven years
10    make it systematic.  And the case law which I can cite right,
11    very new case, a month ago from the District of Colombia.
12              THE COURT:  I'm sorry.  You said a very new case
13    from the District of Colombia?  Okay.  If you could give me
14    the name and the citation, please.
15              MR. POPOV:  The case United for FBI Integrity
16    versus Department of Justice.  No. 22-CV-2885.
17              THE COURT:  And is this an order from the court or
18    a published opinion?
19              MR. POPOV:  That's the opinion.  The case is from
20    March 6, 2024.
21              THE COURT:  And tell me the name of the case.  You
22    said FBI Integrity?
23              MR. POPOV:  United for FBI Integrity versus
24    Department of Justice.  And I can read that this opinion
25    refers to long-standing probe that important questions about
```

1  how an agency enforces the law is a public interest.  It does
2  not acquire a showing and that can be advanced by a single
3  case study.  Because how otherwise we can see what the
4  Department of Homeland Security is doing.
5          We don't have a power, people like me.  It's luck
6  that we got this case to see all this misconduct because the
7  Department of Homeland Security is shielding himself.  They
8  are shielding their -- you cannot get to them.  They don't
9  answer even the fraud line which is online.  They don't
10 even -- they cannot talk to person.  You cannot touch even
11 evidence.  It is just a tip line.  You can explain and no one
12 contacts you.
13         They have to mail a certified receipt you get, but
14 no one contact you.  That's not how the system should work
15 because this is modern -- this threat to the national
16 security.  If criminal like this can get all these benefits
17 for seven years with so many tips and knowing, terrorists can
18 do the same.  And the path to be U.S. citizen is very strong
19 and resulting to be legal at the border.  It is a different
20 thing if you are a citizen because you have all the benefits
21 and you can do very bad things.  What is going on?
22         The same individual, I'm hearing around because my
23 community is not that big, now it's a big drug dealer
24 importing wholesaler from Northern California shipping to
25 Los Angeles.  And no one even stop him because he has

1    American passport.
2            THE COURT:  Let me switch over to defense counsel.
3    Ms. Cronin, I have some questions for you.  I guess starting
4    with what Mr. Popov just said about this case, I haven't read
5    it obviously, but the premise is it suggests that a single
6    case can satisfy, if you will, the standard that would
7    justify moving forward with the case.
8            What's your response?
9            MS. CRONIN:  Yes, Your Honor.
10           I have not read that case either or heard that
11   cite, but the 9th Circuit has had the opportunity to address
12   the situation where you have a single file being requested
13   through a FOIA request.  In the Hunt versus FBI case, the
14   reasoning for Exemption 6 applying and the court saying we're
15   not gonna give you the files because in part it was an
16   isolated case.  It was a single FBI being requested.  The
17   only public -- there was no public interest.  It was just the
18   individual's interest requesting the file.
19           And that's the same as the 9th Circuit's decision
20   in Burton v. Wolf.  While that's an unpublished case, it's
21   very factually similar to this case.  And the court again
22   reasoned in an isolated case that doesn't meet the public
23   interest requirement.
24           THE COURT:  Would any -- what would be an example
25   where you would meet the public interest requirement?

1     Mr. Popov is saying look, it's seven years of misdeeds and
2     missteps he alleges from DHS. If that doesn't show that
3     there's a systemic problem, what could?
4                 MS. CRONIN:  I don't know a specific situation that
5     would show that, but I do know in the briefing the plaintiff
6     did cite the Muchnick case which is a district court case so
7     not binding out of the Northern District of California.  In
8     that case you had someone who was a very widely known public
9     figure to a certain extent.  He was the coach of the Irish
10    swim team.  He immigrated over and at the time he immigrated
11    over, it was publicly known -- so we know the facts.
12                That was an instance where the court did look at a
13    single file, but found there was no privacy interest in those
14    allegations because they were publicly known.  And the second
15    prong, there had been a showing of evidence of potential
16    impropriety by the government because they were publicly
17    known, there was something there.
18                Whereas here all we have allegations about an
19    unknown individual that we have another individual making and
20    trying to get an immigration file.  There's never been a case
21    where a court said that would be enough to get over
22    Exemption 6 that we're aware of.
23                THE COURT:  Okay.  Procedurally, you raise the
24    issue about the cross-motion for summary judgment.  I just
25    want to make sure I understand your position.  Is it you have

1  notice or what?
2          MS. CRONIN:  I think why we did it as a motion to
3  dismiss or in the alternative summary judgment motion is that
4  the question --
5          THE COURT:  I mean you filed your motion.  Then
6  Mr. Popov tried to file a cross-motion.  You say he didn't
7  seek leave from court to do that, um, and didn't meet and
8  confer.  So are you saying we shouldn't consider it or what?
9          MS. CRONIN:  We don't think Your Honor should
10 consider the cross-motion for summary judgment; however, our
11 pending motion to dismiss and cross-motion for summary
12 judgment is on the same issues.
13         THE COURT:  All right.  So there really is no
14 prejudice, is there?
15         MS. CRONIN:  There is no prejudice, Your Honor.
16         THE COURT:  So it is more procedural.  And I don't
17 mean to minimize it, but the fact he didn't seek leave,
18 didn't meet and confer.  But the issues -- it's not like
19 you're caught by surprise or there's some issues left hanging
20 that you feel at a disadvantage because he filed it.
21         MS. CRONIN:  It's correct, Your Honor, that there
22 were no new issues raised.
23         THE COURT:  Fair enough.
24              What about in the papers, in the plaintiff's papers
25 he says well, look, at a minimum, you should be required to

```
 1   file redacted copies of these records with a Vaughn Index.  I
 2   don't think you addressed it in your reply.  I'm just
 3   wondering what your position is with respect to that.
 4           MS. CRONIN:  Sure.  So our position would be
 5   because our position is the Department's initial
 6   determination that these documents are exempted from FOIA,
 7   you wouldn't file a Vaughn Index in that instance cause
 8   there's no production being made or really withheld.  It's
 9   just saying -- the Department's position is we're not saying
10   actually even any of these documents necessarily exist.  Just
11   to the extent they did exist, they wouldn't be subject to
12   FOIA because of the Exemption 6.
13           THE COURT:  Got it.  Those are all the questions I
14   have.  Mr. Popov, anything else you wish to state at this
15   time?
16           MR. POPOV:  Can I reply?
17           THE COURT:  Yes.
18           MR. POPOV:  About the individual file, individual
19   file, you know, Muchnick case which actually published
20   clearly said it's not like, uh, the defendant is saying.
21   This case is not about something that everybody knows.  No.
22   The person who is looking for the file of the individual just
23   want to see how come somebody who is accused of sexual
24   crimes, how come the Department of Homeland Security grant
25   him green card?  All those allegations are public, but they
```

1    want to know in fact and the court granted the FOIA.
2             Also, in the same case, there is completely,
3    exactly says, it says quote, "Although the information in
4    Muchnick attack solely on one individual, much of it shed
5    light on multiple decision by multiple Department of Homeland
6    Security personnel."  So it clearly says that -- the case is
7    published in Northern District so it's still in California.
8             It clearly says that individual file when there's
9    so many multiple agency is not any more individual and that's
10   why they ordered the file to be released.
11            And in this case, if this guy even was not
12   convicted and even sexual crimes without conviction are not
13   ground for deportation or for exclusion.  And in this case,
14   in my case, this is just very few incidents.  One incident,
15   one green card and one temporary green card.  Here in this
16   case seven years so many different failures of whatever part
17   they are.  So my case is hundred percent stronger than
18   Muchnick and they granted the file.
19            THE COURT:  All right.  Thank you, Mr. Popov.  I
20   appreciate it.
21            Do you wish to say something in response?
22            MS. CRONIN:  Yes, Your Honor.  I'll quickly point
23   out in the Muchnick case, if you skip to the conclusion, the
24   court ordered the information that was already publicly known
25   to be disclosed by the agency not the addresses and

1      information that was not publicly known.
2              THE COURT:  Not the addresses and information.
3      Okay.  So your point is that basically, it was much ado about
4      nothing because all that got disclosed was what was already
5      in the public record.
6              MS. CRONIN:  Correct, Your Honor.
7              THE COURT:  Okay.  Thank you.
8              MR. POPOV:  Say one second word?
9              THE COURT:  Okay, go ahead.
10             MR. POPOV:  In the case of Todorov, I'm not seeking
11     only his addresses.  I'm seeking all the applications whether
12     he admitted that what he's working.
13             THE COURT:  You want the whole file.
14             MR. POPOV:  The whole file.  The addresses we
15     already know the addresses.
16             THE COURT:  You want the information that DHS
17     considered to ascertain or in your view to show that they
18     turned a blind eye to clear red flags that should have caused
19     his application to be denied.
20             MR. POPOV:  Exactly.  And especially during the
21     authorization interview in those 55 days, did they run the
22     security check which is mandatory?  When they discover it,
23     why didn't discover, and all these kind of stuff.  Figure out
24     how a person can cheat the system for so long seven years.
25     That's really the public needs to know and it's gonna help

```
 1    the Department of Homeland Security fix itself of this
 2    security threat.
 3              THE COURT:  All right.  Thank you both.  I
 4    appreciate the argument.  I'm gonna take some time to think
 5    about this, look at the cases in light of the argument.  So
 6    the matter will remain under submission until the Court
 7    issues its final order.
 8              Thank you all for your time.  Thank you for your
 9    patience.  I think you heard earlier why I was late.
10              Have a good weekend and be safe.
11              (Proceedings were concluded at 3:38 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATE OF REPORTER

COUNTY OF LOS ANGELES    )
                         ) SS.
STATE OF CALIFORNIA      )

I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES.


DATE: OCTOBER 30, 2024


    /s/   LAURA MILLER ELIAS
LAURA MILLER ELIAS, CSR 10019
FEDERAL OFFICIAL COURT REPORTER